**Opinion issued March 16, 2023**



In The

# Court of Appeals

**For The**

# First District of Texas

—————————————

**NO. 01-22-00739-CV**

—————————————

## IN THE INTEREST OF N.E., A CHILD

---

**On Appeal from the 315th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-00150J**

---

### MEMORANDUM OPINION

Appellant, E.D. (Mother), appeals the trial court's final order terminating her parental rights to her daughter, N.E. (Nora), and appointing the Department of Family and Protective Services (the Department) as sole managing conservator of the child.[1] In five issues, Mother contends that the evidence is legally and factually

---

[1] We refer to the parties by pseudonyms. *See* TEX. R. APP. P. 9.8(b)(2).

insufficient to support termination under Family Code Section 161.001(b)(1)(D), (E), or (O) or the best interest finding under Section 161.001(b)(2), and the trial court abused its discretion by appointing the Department as the sole managing conservator of Nora. We affirm.

## Background

### A. Department's Removal of Nora

On January 6, 2021, the Department received an intake advising that Mother tested positive for THC in her urine prenatally and upon admission to deliver her baby. Nora, who was born later that day, tested positive for marijuana in her meconium.

On February 1, 2021, the Department filed its original petition for child protection, conservatorship, and termination of parental rights, accompanied by the affidavit of Diazeo Critton, a Department caseworker. Critton stated that she met Mother at the hospital on January 7. When Critton asked Mother about her positive drug test, Mother said that the last time she used marijuana was in September 2020, and she could not explain why her urine tested positive. Mother told Critton that she had also taken a drug test two weeks earlier. Those test results showed Mother was positive for synthetic marijuana in her urine and negative in her hair.[2] In her

---

[2]     The Centers for Disease Control and Prevention's website states:

2

affidavit, Critton stated that Mother was also currently involved in an open conservatorship case concerning Nora's sister, Lee,[3] and that Mother's two other daughters, Victoria and Gabrielle, were adopted by the children's paternal grandmother. In the section entitled "DFPS History," Critton detailed the investigations leading up to the removal of Mother's other children and noted Mother's ongoing drug use. Critton stated that Nora was released to her paternal grandmother on January 8, 2021.

On March 29, 2021, following a full adversary hearing, the trial court signed a temporary order finding there was sufficient evidence to show a continuing danger

---

Synthetic cannabinoids ("synthetic marijuana," "Spice," "K2") are various manmade chemicals that some people may use as an alternative to marijuana. These seemingly innocent little packages of "fake weed" can cause serious side effects that are very different from those of marijuana.

Synthetic cannabinoid products can be toxic. As a result, people who smoke these products can react with rapid heart rate, vomiting, agitation, confusion, and hallucinations. Some have to get help from emergency medical services or in hospital emergency departments or intensive care units.

https://www.cdc.gov/nceh/hsb/chemicals/sc/default.html (last visited March 6, 2023).

[3] The case involving Lee is Trial Court Cause No. 2020-00219J, in the 315th District Court, Harris County, Texas. The Fourteenth Court of Appeals affirmed the trial court's judgment terminating Mother's parental rights to Lee. *See In re L.E.*, No. 14-22-00220-CV, 2022 WL 4354119, at *11 (Tex. App.—Houston [14th Dist.] Sept. 20, 2022, pet. denied) (mem. op.).

to Nora's physical health and safety and that it was contrary to the child's welfare to remain in the home. The order prohibited Mother and R.E. (Father)[4] from having any unsupervised contact or overnight supervision with Nora. The trial court appointed the Department as Nora's temporary managing conservator.

On May 9, 2021, the Department filed a status report with the trial court which included a copy of Mother's family service plan. The plan required Mother to (1) maintain stable housing and employment and provide proof of both to her caseworker, (2) participate in a six-to-eight week parenting class, (3) follow all recommendations of her substance abuse assessment and service provider, including inpatient care if deemed appropriate by her provider, (4) participate in random drug tests, (5) attend NA/AA meetings and provide sign-in sheets to her caseworker, and obtain a substance abuse sponsor, (6) attend a domestic violence course, (7) complete individual counseling and a psychiatric evaluation, (8) complete an anger management class, and (9) attend all court hearings, visits, and permanency meetings.

On September 14, 2021, the trial court signed an order finding that Mother had not demonstrated adequate and appropriate compliance with her service plan.

---

[4] Father, whose parental rights to Nora were also terminated in the trial court's decree of termination, is not a party to this appeal.

4

**B.    Trial Proceedings**

The trial began on March 8, 2022 and spanned three days. Four witnesses testified: Celena Amador, the Department caseworker, Mother, Althea Lacewell, the Child Advocate ad litem, and Nora's foster mother. Nora was one year old at the time of trial.

Amador testified that she was assigned to the case a little more than a year ago and was also the caseworker assigned to the conservatorship case involving Nora's sister, Lee. At the Department's request, the trial court took judicial notice of its file in Lee's conservatorship case.

Amador testified that Nora came into the Department's care after Mother and child tested positive for marijuana at the time of Nora's birth. Mother visited Nora once or twice during the pendency of the case and her last visit took place in July 2021. Amador stated that Mother had not completed her service plan in this case or in her other conservatorship case. The trial court suspended Mother's visitation in August 2021 due to her failure to comply with her service plan and submit to a drug test, as well as her continued drug use.

Mother tested positive for marijuana in her hair on February 8, 2022. Amador testified that Mother took another drug test the week before trial, and that she tested negative in her urine, but she did not submit to a hair follicle test. Amador testified that she was aware that Mother was using CBD products.

5

As for Mother's service plan, Amador testified that Mother still needed to complete inpatient drug treatment. She stated that she had informed Mother several times that completion of the service was her responsibility. Amador testified that Mother took a substance abuse assessment but was unsuccessfully discharged. Mother eventually followed up on the assessment, but she did not successfully complete it. She successfully completed her parenting services but Amador felt that she did not learn anything from them. Amador testified that Mother completed a mental health assessment but she did not follow the assessment's recommendations. Amador asked Mother to submit to random drug tests but Mother did not substantially comply with the requests.

Amador visited Nora in her current placement and testified that "she's doing really good" and is "a happy baby." She stated that Nora was very attached to and bonded with her foster mother, and that she often gravitated toward her throughout the visits. Amador stated that Nora was smiling more and happier at each visit, and Amador was able to see more of Nora's personality coming out. Amador testified that Nora was also very bonded with her sister, Lee, who was placed with the same foster family. Amador testified that the foster mother has provided for all of Nora's needs, including taking her to doctor's appointments, and loved and cared for Nora. Amador stated that the foster mother was the only person whom Nora has known her whole life and that the foster mother wished to adopt Nora.

Amador testified that Nora is developmentally on target, is close to taking steps on her own, had a wellness check and dental check in January and February 2022, and is doing very well in daycare. Amador testified that Mother's parental rights to Lee were terminated, and Lee remains in the care of her foster mother. Amador believed that it was in the best interest of the children to remain together and in their foster parent's care.

Mother admitted that she tested positive for illegal drugs when Nora was born. She testified that she was using CBD products because of pain in her arm and that her doctor knew about it. She stated that she has only tested positive for marijuana and no other illegal substances.

Mother testified that the "substance abuse lady" told her she was waiting on the paperwork so Mother could begin an inpatient treatment program, and that she planned to complete this service. She also testified that she has been consistently taking CBD products, and the substance abuse lady told her that she might test positive for marijuana but that they would just have to see when the test results came back. Mother testified that the court suspended her visitation rights but she still wanted to visit with Nora.

Mother testified that the only time period during which she did not submit to a drug test was after she was in a car accident because she did not have reliable transportation. Although Mother testified that she had a job working from home in

November 2021, her doctor told her to continue physical therapy for her back injury and that she could not continue doing her job and should instead apply for disability benefits. Mother was not working at the time of trial.

Mother testified that the last time she spoke to Father was when he showed up at her house in January or February 2022. She stated that Father had been aggressive toward her and she had recently obtained a protective order against him. She testified that she had previously moved to another location to prevent Father from contacting her but that she has not moved from her current residence because she did not want the Department to think that she was not providing a stable home for Nora. Mother testified that her caseworker has visited her current home and found it suitable for young children.

Following the conclusion of testimony, the trial court ordered Mother to submit to a drug test the next day. The test results showed that Mother was positive for marijuana in her hair but negative in her urine.

Trial resumed on August 1.[5] Amador testified that Mother had not completed any additional services with the Department since May. When Mother asked for

---

[5] Trial was set to resume on May 31 but the trial court continued the proceedings to allow time to review four exhibits offered by the Department from the proceedings in Cause No. 2020-00219J and determine their admissibility.

assistance in finding an inpatient drug counseling treatment program, Amador encouraged her to reach out to her previous substance abuse providers and referred her back to the information that Amador and one of Mother's service providers had previously sent her. Amador also suggested that Mother contact her insurance provider about rehabilitation services.

Amador testified that Mother had not participated in the required random drug tests for the past five months. Amador stated that she had asked Mother to submit to weekly drug tests but that Mother did not respond. Amador testified that Mother completed her mental health assessment but she did not complete the recommended twelve-week substance abuse outpatient treatment program. Mother began an anger management class but she missed appointments which resulted in her being unsuccessfully discharged from the class. Amador testified that Mother completed a psychological assessment but did not complete the required follow-up evaluations. Amador testified that Mother has not made any progress with her court-ordered services for the past five months.

Amador testified that Nora has been in the same foster placement as Lee since March 2021, and the sisters are extremely bonded with one other. Nora had a dental check up on June 10 and a medical checkup on July 18. Amador testified that she believed it was in Nora's best interest to remain in her current placement because

Nora is with her sibling, and she is very bonded with her foster parent who wishes to adopt her.

Amador stated that neither Mother nor Father had completed the family service plan. Amador testified that Father was in jail at the time of the hearing. Amador testified that Mother's service plan required that she not be involved in any criminal activity or other conservatorship proceedings. She stated that Mother was charged with unauthorized use of a vehicle on November 20, 2021, but that the charge was later dismissed. Amador testified that neither Mother nor Father has visited Nora since the last hearing.

Mother admitted testing positive for an illegal substance in March 2022 but stated that it was due to her use of CBD products. Mother testified that she took the CBD products for nausea during her pregnancy under the supervision of her obstetrician, Dr. Dix, who told her it was fine to take them. She testified that her former substance abuse counselor told her that if she took a certain amount of CBD product she would test positive but that she understood Mother's situation. Mother stated that she was not aware that she was ingesting an illegal level of THC. Mother acknowledged that she made a mistake when she took the CBD products but stated that she took it because the promethazine that had been prescribed to her was too strong. Mother testified that she gave her doctor's contact information to Amador. She stated that she did not provide the Department with confirmation from her doctor

that he had approved her use of CBD products after she tested positive for drugs in March 2022 because she did not know she tested positive.

Mother testified that she was taking NA/AA classes through an online app. She stated that she completed an anger management class and a domestic violence class and that the only service she did not complete was an inpatient substance abuse program. She testified that she tried to contact the program but did not have any luck, and her insurance did not cover inpatient drug treatment. Mother testified that she contacted her former substance abuse counselor who pointed her to some places but those programs were full and they told her she had to obtain paperwork from the Department. Mother stated that when she asked Amador about it, Amador told her that the Department did not offer inpatient treatment. Mother testified that she was on a waiting list for a program somewhere in Santa Fe.

Mother testified that she spoke to Father about their daughter's birthday after the thirty-day protective order had expired. She stated that they spoke over Facebook and he gave her a ride the day he was arrested. Mother testified that she currently has her own residence. She stated that Amador and the guardian ad litem have visited the home and did not express any concern other than asking her to have a camera installed. Mother testified that she did not believe it was in Nora's best interest to remain in her current foster placement because she has other siblings and family members.

11

Althea Lacewell was the Child Advocates guardian ad litem assigned to this case as well as the case involving Lee. Lacewell testified that Child Advocates believed that it was in Nora's best interest to remain in her current placement with her sibling and that Mother's and Father's parental rights should be terminated due to ongoing concerns about the parents' drug use that had not been remedied. Lacewell testified that she visited Nora and Lee once a month in their current placement and that both girls were doing excellent. Lacewell stated that they loved each other, were involved in activities, and were bonded with their foster family. Lacewell testified that she had been assigned to the girls' cases for quite a while and had the opportunity to watch them grow and thrive. She testified that Nora was very attached to her foster mother whom she called "mommy," and that Nora believed she was her mother due to her being removed shortly after she was born. Lacewell testified that the foster mother met all of Nora's physical, medical, and emotional needs and care.

Lacewell testified that Mother loved her children but Lacewell did not believe that she had tried hard enough. She stated that although Mother insisted that drugs were not an issue, Mother tested positive for synthetic marijuana in 2020 which was unrelated to her use of CBD products. Lacewell testified that this was the second time she had recommended that Mother complete inpatient drug treatment and that Mother had refused to go to an inpatient program in 2020.

Lacewell testified that Mother has been diagnosed with major depressive disorder with anxiety and was a victim of domestic violence and other childhood traumas that have not been addressed. Lacewell testified that Mother completed her psychological and psychiatric evaluations and the counseling recommendation but that she did not want to take medication to address her depression. As a result, Lacewell found it difficult to conclude that Mother could meet her children's needs when her own needs have not been met.

Lacewell, Amador, and the attorney ad litem met with Mother in November 2021. Lacewell testified that Mother had bite marks and a black eye and that it took nearly the entire visit for Lacewell and Amador to convince Mother to protect herself. Lacewell testified that if the kids had been in the home and Father had broken down the door, as Mother said he did, the children would have been exposed to the violence. Lacewell testified that Mother has not done anything to show that she wants to keep Nora and has not tried to create a bond with her. Lacewell reiterated that the children were safe, the children's needs were being met, and they should remain in their placement.

Lacewell testified that when she visited Mother's apartment with Amador and the guardian ad litem, Mother told them that she disclosed to Father where she lived. Lacewell stated that this disclosure concerned her because of the history of domestic violence to which the children had been exposed. Lacewell testified that she

observed the children after their visit with Mother. She stated that while she did not observe a change in Nora due to her young age, Lee's behavior drastically changed, including wetting her bed, and these concerns were the reason Lee was still in counseling.

Lacewell testified that she, Amador, and the guardian ad litem have spoken to Mother about their concern that Father was using drugs and that Mother continued to defend him. Lacewell was also concerned that Mother had spoken to Father the previous week. Lacewell did not believe that Mother had demonstrated adequate parenting skills. She testified that the foster mother has provided health and nutritional care, guidance and supervision, and a safe home environment to the children.

The foster mother testified that she has been caring for Nora since she was born and has provided her with emotional support, physical support, love, and stability. She introduced Nora to new activities and hoped to watch Nora continue to grow, explore, learn new words, and become the best person she can be. The foster mother stated that Nora is very attached to Lee and that the two girls have a very strong bond. She stated that although Nora is not her biological child she feels like she is in her heart. She testified that Nora was one year old and both she and Lee call her "Mama." The foster mother testified that she wished to adopt both Nora and Lee.

At the conclusion of trial, the Department requested that the trial court terminate Mother's parental rights based on Section 161.001(b)(1)(D), (E), (N), (O), and (P). On September 22, 2022, the trial court signed a final decree of termination finding that clear and convincing evidence existed to support a finding under subsections (D), (E), and (O), and that termination was in the best interests of the child.[6] This appeal followed.

**Sufficiency of the Evidence**

In her first three issues, Mother contends that the evidence is legally and factually insufficient to support termination under Family Code Section 161.001(b)(1)(D), (E), or (O).

**A.    Standard of Review**

A trial court may order termination of the parent-child relationship if the Department proves, by clear and convincing evidence, one of the statutorily enumerated predicate findings for termination and also proves that termination of parental rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b); *see In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012) (recognizing that federal due process clause and Family Code both mandate "heightened" standard of review of clear and convincing evidence in parental rights termination cases). The Department must

---

[6]    The trial court also terminated Father's parental rights pursuant to Section 161.001(b)(1)(N) and (O) and found that termination was in the child's best interest.

prove both elements—a statutorily prescribed predicate finding, and that termination is in the child's best interest—by clear and convincing evidence. *See In re E.N.C.*, 384 S.W.3d at 803. The Family Code defines "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

When assessing the legal sufficiency of the evidence in a termination proceeding, we consider all evidence in the light most favorable to the trial court's finding and decide "whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *see City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005). We assume that any disputed facts were resolved in favor of the finding if a reasonable factfinder could have done so. *In re J.F.C.*, 96 S.W.3d at 266. When "no reasonable factfinder could form a firm belief or conviction" that the matter on which the Department bears the burden of proof is true, we "must conclude that the evidence is legally insufficient." *Id.* In reviewing the evidence's factual sufficiency, we consider the entire record, including disputed evidence. *Id.* The evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have resolved in favor of the finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction. *Id.*

16

We give due deference to the factfinder's findings, and we cannot substitute our own judgment for that of the factfinder. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *See id*. at 109.

**B.     Applicable Law**

Protection of the best interest of the child is the primary focus of the termination proceeding in the trial court and our appellate review. *See In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). A parent's right to "the companionship, care, custody, and management" of his or her child is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982); *see In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). Accordingly, we strictly scrutinize termination proceedings and strictly construe the involuntary termination statutes in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

In a case to terminate parental rights under Texas Family Code Section 161.001, the Department must establish, by clear and convincing evidence, that (1) the parent committed one or more of the enumerated acts or omissions justifying termination and (2) termination is in the best interest of the child. TEX. FAM. CODE § 161.001(b). Only one predicate finding under Section 161.001(b)(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d at 362.

## C.    Predicate Finding

Family Code Section 161.001(b)(1)(E) provides that the trial court may terminate a parent's rights if the court finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Within the context of Subsection (E), endangerment encompasses "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). To "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *Id.*; *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996).

It is not necessary to establish that a parent intended to endanger a child to support termination under subsection (E). *In re J.D.G.*, 570 S.W.3d 839, 851 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (citing *In re M.C.*, 917 S.W.2d at 270). Nor is it necessary to establish that the parent's conduct was directed at the child or caused actual harm; rather, it is sufficient if the parent's conduct endangers the child's well-being. *See Boyd*, 727 S.W.2d at 533; *Walker v. Tex. Dep't of Fam. & Protective Servs.*, 312 S.W.3d 608, 616 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Danger to a child's well-being may be inferred from parental misconduct. *Boyd*, 727 S.W.2d at 533; *In re K.P.*, 498 S.W.3d 157, 171 (Tex.

App.—Houston [1st Dist.] 2016, pet. denied). Termination under Subsection (E) must be based on more than a single act or omission; the statute requires a voluntary, deliberate, and conscious course of conduct by the parent. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). A court properly may consider actions and inactions occurring both before and after a child's birth to establish a "course of conduct." *In re S.M.*, 389 S.W.3d 483, 491–92 (Tex. App.— El Paso 2012, no pet.).

Endangering conduct does not have to occur in the child's presence. *In re I.T.*, No. 01-18-01013-CV, 2019 WL 1996515, at *8 (Tex. App.—Houston [1st Dist.] May 7, 2019, no pet.) (mem. op.). A parent's past endangering conduct may create an inference that past conduct may recur and further jeopardize the child's present or future physical or emotional well-being. *See In re J.D.G.*, 570 S.W.3d at 851 (citing *In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.)). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

Mother argues that the evidence was legally and factually insufficient to support the trial court's finding under Subsection 161.001(b)(1)(E) because the evidence of endangerment amounted to one criminal case that was dismissed, two

positive drug tests for marijuana, conflicting testimony regarding her contact with Father, and inconclusive testimony regarding her alleged mental health issues.

The evidence that Mother was charged with unauthorized use of a vehicle—a charge that was later dismissed—is not clear and convincing evidence that Mother's conduct endangered Nora. Similarly, the evidence that Mother suffered from major depressive disorder with anxiety and did not want to take medication for her mental health issues is alone insufficient to support a finding of endangering conduct under Subsection (E).

A mother's illicit drug use during her pregnancy, however, can support a firm belief or conviction that the parent has engaged in endangering conduct. *See In re I.T.*, 2019 WL 1996515, at *9; *In re S.I.–M.G.*, No. 02-12-00141-CV, 2012 WL 5512372, at *9 (Tex. App.—Fort Worth Nov. 15, 2012, no pet.) (mem. op.); *In re M.L.B.*, 269 S.W.3d 757, 760 (Tex. App.—Beaumont 2008, no pet.); *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ). The Texas Supreme Court has held that "a parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct." *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009); *see also In re M.E. –M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied) ("Drug use and its effect on a parent's ability to parent may establish an endangering course of conduct."); *Toliver v. Tex. Dep't of Fam. & Protective Servs.*, 217 S.W.3d 85, 98

(Tex. App.—Houston [1st Dist.] 2006, no pet.); *In re U.P.*, 105 S.W.3d 222, 233 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("Endangerment may include evidence of drug addiction and its effect on a parent's life and his ability to parent."); *see also In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("[I]llegal drug use may support termination under subsection 161.001(1)(E) because 'it exposes the child to the possibility that the parent may be impaired or imprisoned.'"); *In re A.M.*, 495 S.W.3d 573, 579–80 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("Because it significantly harms the parenting relationship, drug activity can constitute endangerment even it if transpires outside the child's presence.") (quoting *Boyd*, 727 S.W.2d at 533)); *In re K.C.F.*, No. 01-13-01078-CV, 2014 WL 2538624, at *10 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) ("[A] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being.").

The record shows that Mother tested positive for marijuana at the time of Nora's birth and that Nora tested positive for marijuana in her meconium. In her affidavit accompanying the Department's petition, Critton stated that she visited Mother at the hospital where Mother told her that she had taken a drug test two weeks

earlier during her pregnancy. The test results showed Mother had tested positive for synthetic marijuana in her urine.

The evidence also showed that the trial court suspended Mother's visitation with Nora in August 2021 because she had failed to comply with her services to date and had not stopped her drug use or submitted to a drug test. The evidence showed that Mother tested positive for marijuana in February 2022 and, again, in March 2022 after the trial court ordered her to submit to a random drug test. *See In re L.M.R.*, No. 14-17-00597-CV, 2018 WL 285121, at *6 (Tex. App.—Houston [14th Dist.] Jan. 4, 2018, pet. denied) (mem. op.) ("Continued illegal drug use after a child's removal jeopardizes parental rights and may demonstrate an endangering course of conduct."). Between March and August 2022, the Department asked Mother to submit to drug tests on a weekly basis but Mother did not comply with any of the requests. Mother's failure to appear for regular drug testing permitted the trial court to infer Mother was using illegal drugs. *See In re L.E.*, No. 14-22-00220-CV, 2022 WL 4354119, at *8 (Tex. App.—Houston [14th Dist.] Sept. 30, 2022, pet. denied) (mem. op.); *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding Mother's failure to continue appearing for court-mandated drug tests, despite her testimony citing scheduling and transportation problems, allowed factfinder to infer that her failure to submit to drug screenings indicated she was avoiding testing because she was using drugs).

At the time of Nora's removal, Mother had an open conservatorship case involving Nora's sister, Lee. The trial court in this case took judicial notice of its file in that case, Cause No. 2020-002219J, and the Fourteenth Court of Appeals later affirmed the trial court's judgment terminating Mother's parental rights to Lee. *See In re L.E.*, 2022 WL 4354119, at *11. In its opinion, the court of appeals detailed Mother's substance abuse issues—in particular, Mother's positive test for marijuana in January 2021 and her admission to a caseworker in December 2019 that she was using drugs—and concluded that the trial court could have found that Mother had engaged in endangering conduct by using illegal drugs while the case was pending. *See id.* at *8. The court held that the evidence was legally and factually sufficient to support the trial court's Subsection 161.001(b)(1)(E) findings. *See id.*

In addition to the evidence of Mother's continued illicit drug use, the record also includes evidence that Mother remained in contact with Father despite his history of domestic violence toward her. When Lacewell and Amador met Mother in November 2021, Mother had bite marks and a black eye and it took nearly the entire visit for Lacewell and Amador to convince Mother to protect herself. Mother testified that Father was aggressive toward her but she still believed that he was a good father to their children. Mother admitted that she had spoken with Father when he "popped up" at her house in January or February 2022. Although Mother obtained a protective order against Father, she admitted that she continued communicating

23

with him after the thirty-day order expired. She also got a ride from him the day he was arrested and communicated with him while he was in jail about their daughter's approaching birthday. *See L.B. v. Tex. Dep't of Fam. and Protective Servs.*, No. 03-09-00429-CV, 2010 WL 1404608, at \*5 (Tex. App.—Austin Apr. 9, 2010, no pet.) (mem. op.) (concluding evidence of exposure to domestic violence and drug use would allow reasonable fact-finder to form firm belief or conviction that Mother engaged in course of conduct that endangered her children's physical and emotional well-being).

Viewing the evidence in the light most favorable to the trial court's finding, we conclude the trial court could have formed a firm belief or conviction that Mother engaged in conduct that endangered Nora's physical or emotional well-being. *See In re J.F.C.*, 96 S.W.3d at 266. Further, in view of the entire record, we conclude that the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that Mother engaged in conduct that endangered Nora's physical or emotional well-being. *See id.*

Because we conclude the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(b)(1)(E), we overrule Mother's second issue. We need not address Mother's arguments that the evidence is legally and factually insufficient to support the trial court's findings under Sections

24

161.001(b)(1)(D) and (O). *See In re A.V.*, 113 S.W.3d at 362 (stating only one predicate finding is necessary).

## D.     Best Interest of the Child

In her fourth issue, Mother contends that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in Nora's best interest. *See* TEX. FAM. CODE § 161.001(b)(2).

There is a strong presumption that the best interest of a child is served by keeping the child with the child's natural parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *In re D.R.A.*, 374 S.W.3d 528, 533 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE § 263.307(a).

Courts may consider the following non-exclusive factors in reviewing the sufficiency of the evidence to support the best interest finding: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the

parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive, and evidence is not required on all of them to support a finding that terminating a parent's rights is in the child's best interest. *Id.*; *In re D.R.A.*, 374 S.W.3d at 533. Moreover, we note that evidence supporting termination under one of the grounds listed in Section 161.001(b)(1) can also be considered in support of a finding that termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (holding same evidence may be probative of both Section 161.001 grounds and best interest).

In addition, the Texas Family Code sets out factors to be considered in evaluating the parent's willingness and ability to provide the child with a safe environment, including: the child's age and physical and mental vulnerabilities; whether there is a history of substance abuse by the child's family or others who have access to the child's home; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; whether the child's family demonstrates adequate parenting skills, including providing the child with minimally adequate health and nutritional care, a safe physical home environment, and protection from repeated exposure to violence even though the violence may not be directed at the child; and

an understanding of the child's needs and capabilities. TEX. FAM. CODE ANN. § 263.307(b); *In re R.R.*, 209 S.W.3d at 116.

### 1. Children's Desires

At the time of trial, Nora was one year old and, thus, too young to testify about her desires. *See In re T.G.R.-M.*, 404 S.W.3d 7, 16 (Tex. App.—Houston [1st Dist.] 2013, no pet.). When a child is too young to express her desires, the fact finder may consider whether the child has bonded with the proposed adoptive family, is well-cared for by them, and whether she has spent minimal time with a parent. *See In re S.R.*, 452 S.W.3d at 369. A child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in a best interest determination. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.). Therefore, evidence about the present and future placement of the child is relevant to the best interest determination. *See In re C.H.*, 89 S.W.3d at 28.

The evidence showed that Nora is very bonded with her foster family and that her foster mother, whom Nora calls "mommy," is the only person Nora has known her entire life due to her removal shortly after she was born. Nora is also very attached to her sister, Lee, who lives with the same foster family. The record showed that her foster mother met all of Nora's physical, medical, and emotional needs and care, and that the foster parent wished to adopt Nora and Lee. This factor weighs in

favor of termination of Mother's parental rights. *See Holley*, 544 S.W.2d at 372; TEX. FAM. CODE ANN. § 263.307(b).

### 2. Children's Needs and Parental Abilities of Those Seeking Custody

In addition to the evidence showing that Nora's foster family provided for all of Nora's needs—medical, emotional, psychological, and nutritional—the record showed that Nora was developmentally on target and thriving in her foster placement. Since Nora was placed with her foster family, she appeared happier at each of Amador's visits and her personality had begun to emerge.

In contrast, Mother had not demonstrated the ability to parent Nora. Nora was removed shortly after her birth due to Mother's testing positive for marijuana, and Mother's visitation with Nora was suspended in August 2021 due to Mother's failure to comply with her service plan and submit to drug tests as well her continued drug use. Lacewell testified that Mother loved Nora but Lacewell did not believe that Mother had tried hard enough or demonstrated adequate parenting skills. Mother testified that she had a home and that Amador and Lacewell had found it suitable for young children. Mother testified that she did not have a job at the time of trial and was waiting on disability benefits. Thus, there was no evidence that Mother received any income to provide for Nora's needs.

We may also consider the parent's past performance as a parent in evaluating her present abilities to provide for the child. *See In re C.H.*, 89 S.W.3d at 28.

28

Although evidence of past misconduct or neglect alone may not be sufficient to show present unfitness, a factfinder may measure a parent's future conduct by her past conduct indicating that it is in a child's best interest to terminate her parental rights. *See In re A.N.D.*, No. 02-12-00394-CV, 2013 WL 362753, at *2 (Tex. App.—Fort Worth Jan. 31, 2013, no pet.) (mem. op.). Here, the record showed that Mother's parental rights to Lee were terminated in February 2022—one year after Nora was born but before trial in this case began—based on the trial court's finding, among others, that Mother had engaged in conduct which endangered the physical or emotional well-being of the child. *See* TEX. FAM. CODE ANN. §161.001(b)(1)(E). These factors weigh in favor of termination. *See Holley*, 544 S.W.2d at 372; TEX. FAM. CODE ANN. § 263.307(b).

### 3.     Present and Future Emotional and Physical Danger to Children

A parent's past conduct is probative of her future conduct when evaluating the child's best interest. *See In re O.N.H.*, 401 S.W.3d 681, 684 (Tex. App.—San Antonio 2013, no pet.). Thus, the evidence discussed in support of the trial court's findings under Section 161.001(b)(1)(E) is probative as to potential danger in determining the children's best interest. *See Walker*, 312 S.W.3d at 619.

Nora was removed shortly after she was born because Mother and child tested positive for marijuana. Despite the fact that Mother's drug use was the reason for Nora's removal and Mother had another pending conservatorship case due, in part,

to her continued substance abuse, Mother continued to use drugs during the pendency of this case. A parent's substance abuse supports a finding that termination is in the best interest of the child. *In re E.R.W.*, 528 S.W.3d at 266 (noting factfinder can give "great weight" to "significant factor" of drug-related conduct); *see also Interest of Z.H.*, No. 14-19-00061-CV, 2019 WL 2632015, at *6 (Tex. App.—Houston [14th Dist.] June 27, 2019, no pet.) (mem. op.) (considering parents' drug use in the context of evaluating the present and future emotional and physical danger to the child). The trial court could have also considered the evidence that Mother remained in contact with Father despite his history of domestic violence toward her, and the testimony that Lacewell and Amador had to convince Mother to protect herself after she showed up to their meeting with bruises and bite marks, when evaluating the present and future physical and emotional danger to Nora.

Because the record contains evidence showing that Mother's drug use would persist as well as the possibility that Mother would continue to expose herself to domestic violence and thus present a future emotional danger to Nora, this factor weighs in favor of termination. *See Holley*, 544 S.W.2d at 372; Tex. Fam. Code Ann. § 263.307(b).

Viewing the evidence in the light most favorable to the trial court's finding, we conclude the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in Nora's best interest. *See In re J.F.C.*,

96 S.W.3d at 266. Further, in view of the entire record, we conclude that the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination of Mother's parental rights was in Nora's best interest. *Id.*

We overrule Mother's fourth issue.

## E. Appointment of Sole Managing Conservator

In her fifth issue, Mother contends the trial court abused its discretion by appointing the Department as the sole managing conservator of Nora because the Department failed to introduce sufficient evidence demonstrating that Mother would cause Nora harm.

When the parental rights of all living parents of a child are terminated, the trial court must appoint a "competent adult, the Department of Family and Protective Services, or a licensed child-placing agency as managing conservator of the child." TEX. FAM. CODE § 161.207(a); *see In re S.M.M.*, No. 01-22-00482-CV, 2022 WL 17981669, at \*12 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied) (mem. op.); *In re J.D.G.*, 570 S.W.3d at 856. Conservatorship determinations are reviewed for an abuse of discretion and will be reversed only if the decision is arbitrary and unreasonable. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007); *In re J.D.G.*, 570 S.W.3d at 856. An order terminating the parent-child relationship divests a parent of legal rights and duties with respect to the child. *See* TEX. FAM.

CODE § 161.206(b). Once we overrule a parent's challenge to an order terminating her parental rights, the trial court's appointment of the Department as sole managing conservator may be considered a "consequence of the termination." *In re J.D.G.*, 570 S.W.3d at 856; *In re A.S.*, 261 S.W.3d 76, 92 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

Because we have overruled Mother's challenges to the trial court's order terminating her parental rights, the order divested Mother of her legal rights and duties related to Nora. *See* TEX. FAM. CODE § 161.206(b); *In re J.D.G.*, 570 S.W.3d at 856. Consequently, Mother lacks standing to challenge the portion of the order appointing the Department as Nora's conservator. *See In re S.M.M.*, 2022 WL 17981669, at *12 (affirming termination of father's parental rights and holding that father, who had been divested of his legal rights to child, lacked standing to challenge portion of order appointing Department as child's conservator); *In re J.D.G.*, 570 S.W.3d at 856 (same).

We overrule Mother's fifth issue.

## Conclusion

We affirm the trial's court's decree of termination.

Amparo Guerra
Justice

Panel consists of Justices Landau, Countiss, and Guerra.

32